UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>PAUL BANNON POWERS<br><br>Defendant. | CASE NO.: |

### COMPLAINT AND JURY DEMAND—INJUNCTIVE RELIEF SOUGHT

Plaintiff Securities and Exchange Commission (the "Commission"), for its Complaint against defendant Paul Bannon Powers ("Powers" or "Defendant"), alleges as follows:

### SUMMARY

1. This is an insider trading case involving insider trading by Powers in the securities of SeaWorld Entertainment, Inc. ("SeaWorld") in connection to SeaWorld's Q2 2018 earnings release and related Form 8-K filing on August 6, 2018.

2. At all times relevant to the Complaint, Powers was SeaWorld's Associate General Counsel and Assistant Secretary.

3. By virtue of his role as Associate General Counsel and Assistant Secretary of the company, Powers was made aware no later than July 6, 2018 that SeaWorld's attendance and revenues for Q2 2018 were stronger than anticipated and would exceed analyst expectations.

Further, on August 1, 2018, Powers was provided a draft of SeaWorld's August 6, 2018 earnings release, which described in detail SeaWorld's strong financial performance in the second quarter.

4. Based on this information, on August 2, 2018, Powers purchased 18,000 shares of SeaWorld stock. Following's SeaWorld's premarket Form 8-K filing and earnings release on August 6, 2018, SeaWorld's shares opened up approximately 17%. Powers liquidated all of his SeaWorld shares that morning, for a profit of approximately $64,645, all of which was ill-gotten gains from his fraud.

## NATURE OF THE PROCEEDINGS AND REQUESTED RELIEF

5. The Commission brings this action pursuant to the authority conferred upon it by Section 21(d) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78u(d)]. The Commission seeks a permanent injunction against Powers, enjoining him from engaging in the transactions, acts, practices, and courses of business alleged in this Complaint; disgorgement of all ill-gotten gains from the unlawful insider trading activity set forth in this Complaint, together with prejudgment interest; and civil penalties pursuant to Section 21A of the Exchange Act [15 U.S.C. § 78u-l]. The Commission seeks any other relief the Court may deem appropriate pursuant to Section 21(d)(5) of the Exchange Act [15 U.S.C. § 78u(d)(5)].

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this action pursuant to Sections 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. § 78u(d), 78u(e), and 78aa].

7. Venue lies in this Court pursuant to Section 21(d), 21A, and 27 of the Exchange Act [15 U.S.C. § 78u(d), 78u-1, and 78aa]. Certain of the acts, practices, transactions, and courses of business alleged in this Complaint occurred within the Middle District of Florida and

elsewhere, and were effected, directly or indirectly, by making use of means or instrumentalities of transportation or communication in interstate commerce, or the mails, or the facilities of a national securities exchange. SeaWorld is located in Orlando, Florida, and Powers resides in Winter Garden, Florida.

## DEFENDANT

8.  **Paul Bannon Powers**, lives in Winter Garden, FL. He is the former Associate General Counsel and Assistant Secretary of SeaWorld. He was employed by SeaWorld from approximately October 2011 until October 19, 2018, when he was terminated for the conduct described herein.

## FACTS

### After a Lengthy Period of Soft Revenue and Attendance Numbers, SeaWorld Sees Significant Improvement in Q2 2018

9.  SeaWorld is a Delaware corporation with its principal place of business in Orlando, Florida. SeaWorld is an amusement park company that operates 11 parks across the United States. SeaWorld (ticker: SEAS) shares are listed on the New York Stock Exchange.

10.  Beginning in 2013 and continuing through the end of 2017, SeaWorld experienced declines in attendance and revenue at its parks. During this same time period, SeaWorld shares lost approximately 60% of their value, dropping from approximately $33 per share to $13 per share.

11.  While attendance and revenue were up on a year-over-year basis in Q1 2018, this shift was anticipated due to the Easter holiday weekend beginning in Q1 in 2018, as opposed to Q2 in 2017, and was factored into SeaWorld's and analysts' expectations. Accordingly, attendance and revenue for Q1 2018 were essentially flat compared to expectations.

12. SeaWorld began to observe a significant improvement in its business beginning in approximately May 2018. By mid-June 2018, SeaWorld's internal projections anticipated that both its attendance and revenue were likely to be up more than 8% from the prior year at the close of Q2 2018—a key time period that would have normalized the shifting Easter holiday weekend.

13. These predictions proved correct: in a Form 8-K filing and related earnings release on August 6, 2018, SeaWorld reported that attendance had increased 8%, and revenue had increased 8.7%, when compared to the same time period in 2017.

**Powers Trades on Knowledge of SeaWorld's Q2 2018 Financial Results**

14. Powers, by virtue of his employment as SeaWorld's Associate General Counsel and Assistant Secretary, knew by mid-June that SeaWorld was expecting a strong quarter in Q2 2018, and knew by mid-July that the expectation had become reality.

15. One of Powers' job duties as Assistant Secretary included attending and taking detailed notes of the meetings of SeaWorld's revenue and audit committees. In order to facilitate these duties, Powers was provided with advance copies of the materials to be reviewed at these meetings.

16. On June 18, 2018, Powers received materials prepared for the company's June 20, 2018 revenue committee meeting that reflected that SeaWorld anticipated attendance and revenue to be up more than 8% from the prior year at the close of Q2 2018. Powers attended the meeting on June 20, 2018, and took notes.

17. On July 6, 2018, Powers received materials prepared for the company's July 9, 2018 revenue committee meeting that reflected that SeaWorld had achieved 8% growth in

attendance and 8.7% growth in revenue compared to the prior year at the close of Q2 2018. Powers attended the meeting on July 9, 2018, and took notes.

18. On August 1, 2018, Powers received materials prepared for the company's August 3, 2018 audit committee meeting. The materials included a draft earnings release that reflected revenue and attendance were up 8 and 8.7%, respectively, compared to the same period in 2017, and that earnings before interest, taxes, depreciation, and amortization ("EBITDA") had improved 59.1% compared to the prior year at the close of Q2 2018. Powers also received a draft Form 10-Q filing prepared for the audit committee meeting that reflected that the Company "reached an agreement in principle with the [SEC Enforcement] Staff to settle, without admitting or denying, charges against the Company arising out of the previously disclosed SEC investigation. The Company has recorded an estimated liability of $4.0 million related to this matter." Powers attended the meeting on August 3, 2018, and took notes.

19. On July 31, 2018, Powers liquidated all of the equities in his personal TD Ameritrade account.

20. On August 2, 2018, Powers used the approximately $387,166 in proceeds from his sales to purchase 18,000 shares of SeaWorld stock at a cost of approximately $385,592.

21. Powers purchased the shares because he knew from the materials he received and reviewed by virtue of his role as SeaWorld's Associate General Counsel and Assistant Secretary that SeaWorld had a strong financial quarter in Q2 2018 and its share price was likely to rise following the August 6, 2018 earnings release.

22. SeaWorld issued the earnings release before the market opened on August 6, 2018, announcing better-than-expected attendance, revenue, and EBITDA, as well as the proposed settlement with the Commission.

23. The earnings release caused the price of SeaWorld shares to increase approximately 17%—from $21.13 per share at the close of trading on Friday, August 3, 2018, to $25.40 per share when the market reopened on Monday August 6, 2018.

24. Powers entered an order the morning of August 6 to sell all 18,000 of his SeaWorld shares at market price, and sold his shares that same day for approximately $450,237—realizing proceeds of approximately $64,645 in four days.

### Powers' Trading Violated SeaWorld's Trading Policy

25. At all times relevant to this Complaint, Powers was subject to SeaWorld's Securities Trading Policy ("Trading Policy"). Powers received annual training on the Trading Policy, and certified annually that he had reviewed the policy, understood it, and agreed to follow it.

26. Under the Trading Policy, Powers was only allowed to trade during a Window Period, and even then was required to have his trades pre-approved by SeaWorld's General Counsel.

27. Under the Trading Policy, Powers was further prohibited from buying or selling SeaWorld shares while in the possession of material non-public information ("MNPI"), including information regarding unannounced earnings results.

28. On May 8, 2018, Powers received a letter from the SeaWorld legal department stating that the Window Period for trading in Q2 2018 would run from May 10 to June 15, 2018.

The letter further stated, in bold: "**After the close of the Window Period . . . Restricted Persons may not purchase, sell or otherwise dispose of any of the Company's securities.**" SeaWorld would not have another Window Period opening until August 8, 2018.

29. Powers' purchase and sale of SeaWorld securities between August 2 and 6, 2018, violated SeaWorld's Trading Policy because he traded while in possession of MNPI; he was a Restricted Person and traded outside of a Window Period; and he traded without pre-approval by SeaWorld's General Counsel.

30. At the time of his trading, Defendant knew his trading was in breach of SeaWorld's Trading Policy, knew his trading was in breach of duty of trust and confidence that he owed to SeaWorld and its shareholders, and knowingly and willfully breached the Trading Policy and his duty by trading in securities issued by SeaWorld while in possession of material and confidential information.

## CLAIM FOR RELIEF

**Violations of Exchange Act Section 10(b) and Rule 10b-5 Thereunder**

31. The Commission realleges and incorporates the preceding paragraphs as though fully set forth herein.

32. By virtue of the foregoing, Defendant, in connection with the purchase or sale of securities, by the use of the means or instrumentalities of interstate commerce, or of the mails, or a facility of a national securities exchange, directly or indirectly: (a) employed devices, schemes or artifices to defraud; (b) made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under

which they were made, not misleading; or (c) engaged in acts, practices or courses of business which operated or would have operated as a fraud or deceit upon persons.

33. By virtue of the foregoing, Defendant violated, and unless enjoined, will again violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5).

## RELIEF SOUGHT

**WHEREFORE**, the Commission respectfully requests that this Court:

### I.

Find that the Defendant committed the violation alleged in this Complaint;

### II.

Enter an injunction, in a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure, permanently restraining and enjoining the Defendant from engaging in the transactions, acts, practices, and courses of business alleged in this Complaint and from violating, directly or indirectly, the laws alleged in this Complaint;

### III.

Order that the Defendant disgorge any and all ill-gotten gains, together with pre-judgment interest, derived from the improper conduct set forth in this Complaint;

### IV.

Order Defendant to pay civil monetary penalties pursuant to Section 21A of the Exchange Act [15 U.S.C. §§ 78u(d)(3), 78u-1];

V.

Retain jurisdiction over this action to implement and carry out the terms of all orders and decrees that may be entered; and

VI.

Grant such other and further relief as this Court may deem just and proper.

### JURY DEMAND

The Commission demands a trial by jury on all claims so triable.

Dated: April 9, 2019

        s/ Stephen C. McKenna
        Stephen C. McKenna
        Trial Counsel
        U.S. Securities and Exchange Commission
        Denver Regional Office
        1961 Stout Street, Suite 1700
        Denver, CO 80294
        (303) 844-1000
        mckennas@sec.gov

        *Attorney for Plaintiff*